COMMONWEALTH *v.* CITY OF FRANKFORT, ET AL.

**Lottery—Injunction—Act of March 16, 1869.**

In an action by the attorney general against the board of councilmen of the city of Frankfort to enjoin the board from operating a lottery for the benefit of the city schools, it is held that the Act of March 16, 1869, authorizes such lottery, and the injunction was refused.

**Title of Act Sufficient.**

The eighteenth section of the Act of March 16, 1869, attempting to confer a lottery privilege, is not in conflict with Sec. 27, Art. 2, of the Constitution, which provides that "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title."

**Title of an Act to Amend.**

Under the title of "An act to amend and reduce into one the several acts in relation to the city of Frankfort," the legislature may legally provide for raising the means by taxation, lottery or otherwise, for the education of the children of the city.

**Construction of the Constitution.**

The provisions of the Constitution should receive a liberal and not a technical construction, and no provision of a statute, relating to the subject expressed in the title of an act having a natural connection therewith, and not foreign to the same, should be deemed within the constitutional inhibition (Sec. 27, Art. 2).

**Court's Duty as to Moral Question.**

If a lottery privilege is immoral in its tendency the legislature may interfere with it, but the courts cannot.   It is the duty of the court to construe and decide what the law is, but it has no power to make a law or to repeal one.

APPEAL FROM OLDHAM CIRCUIT COURT.

February 27, 1878.

OPINION BY JUDGE ELLIOTT:

In 1876 the attorney-general of the state filed a petition in the name of the appellant, in which it is charged that the board of councilmen of the city of Frankfort claimed that it had an unexhausted legislative privilege to raise large sums of money by running and operating a lottery for the benefit of the city school of Frankfort. It is further charged that the board of councilmen of the city of Frankfort claim that by legislative authority it has the authority to sell and transfer the lottery privileges, and that in 1875 it did undertake to sell and convey to one Stewart its pretended lottery franchises and privileges, and that Stewart has sold to others, who are engaged in selling lottery tickets, etc., and that appellee, Pepper, and others under the name and style of the "Kentucky Cash Distribution Company" proposed to have a grand drawing of prizes on the 1st of August, 1876.

It is further charged that Pepper and others have advertised this drawing extensively, and are engaged in the sale of tickets by thousands at twelve dollars for a whole ticket, six dollars for a half ticket and at the same ratio for a smaller fraction of a ticket, and they propose a distribution of several hundred thousand dollars to the lucky drawers of prizes. It is further charged that in 1838 the legislature of this state authorized $100,000 to be raised by way of lottery, to be expended for the benefit of the city school of Frankfort and for the erection of the proper machinery by which to supply the city with water to be conveyed from the Cave Spring.

It is, however, charged that the amount authorized to be raised by the Act of 1838 has long since been received by the proper city authorities, and that the attempted sale by the city and the exercise of lottery privileges by its pretended vendees are without authority of law and injurious to public morals by tempting the people into the immoral practice of gaming.

The appellant made the councilmen of the city of Frankfort, the city school trustees, and Stewart and others defendants, and asked the court to enjoin the defendants from proceeding further to sell tickets and operate the lottery privilege claimed by them, and finally the court was asked to cancel, annul and adjudge void the privileges claimed by the appellees.

The defendants demurred to the appellant's petition; the court overruled the demurrers, except so far as the suit sought to affect the rights of the parties under and by virtue of the Act of 1838; but on refusal of the attorney-general to make the board of man-

agers of the lottery privilege granted in 1838 parties, the suit was dismissed so far as it affected defendants' rights under that act.

This is an ordinary action brought to prevent the usurpation of a pretended franchise, and is authorized by Sec. 529 of the former Code of Practice, as was decided by this court in the case of the *Commonwealth v. City of Frankfort,* 13 Bush 185.

The board of councilmen answered the petition of appellant and asserted its right to operate a lottery by legislative grant for the support of the city school of Frankfort, and the other defendants claimed as beneficiaries or vendees of the said board of councilmen.

On hearing the lower court dismissed appellant's petition, and that judgment is here for revision. On the 1st day of February, 1838, the legislature, by its enactment, vested in a board of managers the right to raise by way of lottery $100,000, in one or more classes, as to them might seem proper. One-half of this sum was to be appropriated "to the use and benefit of a city school in the town of Frankfort, and the other half for the construction of such reservoirs, pipes, conductors, etc., that may be necessary to convey the water from the Cave Spring into said town.

The second section provides that the managers shall not reserve more than twenty per cent. of the prizes, and the fourth section authorizes the managers to dispose of the entire lottery scheme, or any classes thereof, for not less than ten per cent of the prizes proposed to be drawn.

On the 16th of March, 1869, the legislature passed an act entitled "An Act to amend and reduce into one the several acts in relation to the city of Frankfort." By this act the legislature, instead of trustees, established a board of councilmen, and vested in them the legislative authority of the city; and in the 18th section of said act it is provided that "said board of councilmen shall have the same franchises, powers and authority as are conferred on the managers in an act entitled 'An Act for the benefit of the city school of the town of Frankfort, and for other purposes, approved February 1, 1838, and shall invest all money realized thereunder in safe and solvent securities, and may use and appropriate the interest and profits of such investment for the support of the city school."

The act referred to by this act of 1869 is the act of 1838, which granted to the managers therein named a lottery franchise or privilege till by it a hundred thousand dollars were raised for the benefit of the city school and the waterworks of Frankfort; and by an act approved March 28, 1872, the board of councilmen of the city of

Frankfort are authorized to sell and transfer all property or franchises belonging to the city; and by these several acts it is claimed that the board of councilmen have a clear legislative grant of the right to raise $100,000 by way of lottery, and that neither they nor their vendees can be operating or running a lottery in violation of law till the authorized sum has been raised, which has not been done.

If, therefore, the Act of February 1, 1838, granted to the managers therein named a lottery franchise, it seems to us that the Act of March 16, 1869, also granted one to the board of councilmen of the city of Frankfort, for it says that "said board of councilmen shall have the same franchises, powers and authority as are conferred on the managers in an act entitled 'An Act for the benefit of the city school of the town of Frankfort, and for other purposes, approved February 1, 1838,'" and as the franchises, power and authority conferred on the managers by the Act of February 1, 1838, embraced the right to raise $100,000 by way of lottery, the franchises, powers and authority of the board of councilmen of the city of Frankfort will not be the same as that conferred on the managers by the act of 1838, unless they also embrace a lottery privilege or the right to raise $100,000 by way of lottery. The word "same" may be synonymous with that of "identical," but is more generally synonymous with "equal" or "exactly" or "similar." We therefore conclude that the legislature of 1869 conferred on the board of councilmen of the city of Frankfort equal franchises, powers and authority, exactly similar to those that had, by the Act of 1838, been conferred on the managers, which included the privilege of raising $100,000 by operating a lottery.

It is very common in the acts incorporating turnpike companies to confer on them the same franchises, powers and privileges as had been conferred by the legislature on some other turnpike company, and nobody ever dreamed that by such enactments the legislature either intended or did transfer the franchises of the companies referred to to the companies it was incorporating. Suppose, for instance, that the legislature had enacted that the Owingsville & Sharpsburg Turnpike Road Company shall have the same powers, privileges and franchises as are conferred upon the Mt. Sterling & Paris Turnpike Road Company by an act which is specifically identified by its title, etc. Can it be contended that by the passage of such an act the franchises, etc., of the Mt. Sterling & Paris Turnpike Road Company are transferred to the Owingsville & Sharpsburg Turnpike Road Company? We think not. But such an act would

confer upon the Owingsville & Sharpsburg Turnpike Road Company powers, privileges and franchises similar to those that had been conferred on the Mt. Sterling & Paris Turnpike Road Company by the previous act referred to.

It is quite common for the legislature, when creating one corporation, to confer on it the same powers and privileges that have been conferred on a similar corporate company by a previous act, and yet it has never been contended that this legislation transfers the franchises of the corporation referred to to the one being created. It only confers similar powers, franchises, etc., on the new corporation to those that had been conferred on the one that was referred to as then existing.

Besides, the fair presumption at the date of the Act of 1869 would have been that the lottery franchise granted to the managers by the act of 1838 had been exhausted; and we cannot assume that the legislature intended to confer on the board of councilmen of the city of Frankfort a franchise which it was reasonable to presume had been exhausted from the age of the grant and other circumstances.

But it is contended that the 18th section of the Act of March 16, 1869, in so far as it attempts to confer a lottery privilege, is in contravention of the 27th section of Art. 2 of the constitution of this state, and therefore void, which section is as follows: "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title."

In commenting on similar constitutional provisions of other states Judge Cooley, in his work on constitutional limitations (6 ed., p. 172), says: "The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible. It has accordingly been held that the title of 'An Act to establish a police government for the city of Detroit' was not objectionable for its generality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support and courts for the examination and trial of offenders, might constitutionally be included in the bill under this general title. * * * The generality of a title is, therefore, no objection to it so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper

connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it." The act assailed as being unconstitutional is entitled "An Act to amend and reduce into one the several acts in relation to the city of Frankfort," and it is provided in the 18th section that the same franchises, powers and authority are conferred on the board of city councilmen as are conferred on the managers in an act entitled "An Act for the benefit of the city school of the town of Frankfort, and for other purposes approved February 1, 1838;" and shall invest all money realized thereunder in safe and solvent securities, and may use and appropriate the interest and profits of such investment for the benefit of the city school.

The question is whether, under the title of "An Act to amend and reduce into one the several acts in relation to the city of Frankfort," the legislature can provide for raising the means by taxation, lottery or otherwise, for the education of the children of the city.

We are of opinion that the provision of the 18th section of the law covered by its title many acts which had been passed by the legislature relating to the city of Frankfort, and amongst others an act establishing a city school, and authorizing a lottery to be operated for its benefit; and the object of the Act of 1869 was to amend and reduce all these laws into one act, and therefore by the title of this act the members of the legislature were notified that all acts relating to the city of Frankfort, as well as her educational and other laws, were to be amended and reduced into one.

By an act entitled "An Act to amend the charter of the Cincinnati & Covington Bridge Company" the legislature increased the capital stock of the company $700,000, and authorized it to sell $100,000 of its stock to the city of Covington, and authorized the city of Covington to raise the $100,000 by a sale of its bonds and tax its people to pay the interest on them; and yet this court has held that it related to but one subject which was expressed in the title. This court has repeatedly held that the provision of the constitution should receive a liberal and not a technical construction, and that no provision of a statute, relating directly or indirectly to the subject expressed in the title, having a natural connection therewith and not foreign to the same, should be deemed within the constitutional inhibition. But should any doubts still exist as to whether the 18th section of the Act of 1869, supra, is covered by its title, it should be forever put to rest by the decision of this court in the Louisville lottery cases, in

which it was decided that under the title of "An Act to establish a public library for the city of Louisville" the legislature had the power and did vest in the library corporation lottery privileges that enabled it to sell the grandest schemes, and having the largest lottery drawings ever witnessed in our state, and as this lottery privilege was unanimously decided by this court to be germane to the Louisville library title it will not do to say a lottery franchise is not germane to the Act of 1869, supra.

Certainly the education of the youth of Frankfort related not only to the city, but to its future prosperity and welfare, and we are of opinion that the provisions of the 18th section of the Act of 1869 were fully covered by its title when construed in the light of the decisions of this and other courts of the union, and as the evidence does not indicate that the lottery franchise has been exhausted we are of opinion that the court on hearing properly dismissed the appellant's petition.

If the lottery privilege is immoral in its tendency the legislature must interfere. This court can construe and decide what the law is, but it has no power either to make a law or repeal one already made by judicial contravention..

Wherefore the judgment of the court below is *affirmed.*

Chief Justice Lindsay and Judge Cofer dissent from this opinion.

*Moss, for appellant.*

*D. W. Lindsay, A. Duvall, John Rodman, T. F. Hallam, for appellees.*